Argued and submitted February 5, reversed and remanded June 23, 1981

# STATE OF OREGON,
*Respondent,*

*v.*

# CHARLES EVANS NAYLOR,
*Petitioner.*

# (CA 17295, SC 27488)

629 P2d 1308

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for petitioner. With her on the briefs was Gary Babcock, Public Defender, Salem.

Karen Green, Assistant Attorney General, Salem, argued the cause for respondent. With her on the briefs were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson, and Tanzer, Justices.

LENT, J.

## LENT, J.

Defendant, tried by jury, was convicted of burglary in the first degree. Defendant was charged with that kind of first degree burglary concerned with unlawful entry, with intent to commit theft, into a building other than a dwelling while being armed with burglar's tools.[1] There was evidence which, if believed, would have justified only a verdict and conviction of criminal trespass in the second degree. The Court of Appeals affirmed, *State v. Naylor,* 49 Or App 57, 618 P2d 1311 (1980), holding that the failure to give defendant's requested instruction on criminal trespass in the second degree was harmless error. That court stated:

> "The defendant testified on his own behalf and gave an exculpatory version of the incident. The jury did not believe him. It therefore follows that an instruction on criminal trespass in the second degree would not have changed the result."

49 Or App at 61.

We allowed review because we were concerned that the decision was not in accord with our decision in *State v. Williams,* 270 Or 152, 526 P2d 1384 (1974). We were further concerned that the Court of Appeals' reasoning, carried to its logical conclusion, would mean that error in refusing to instruct on a lesser included offense would always be harmless. That would vitiate any benefit flowing to a defendant's position from ORS 136.465:

> "In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which he is charged in the accusatory instrument * * *."

## Inculpatory Evidence

A deputy sheriff observed a vehicle and two individuals at a mobile home sales lot at approximately 2:30 a.m. After calling for a back-up, the officer returned to the scene and heard the vehicle accelerating away from the lot.

---

[1] ORS 164.215(1) provides:

"A person commits the crime of burglary in the second degree if he enters or remains unlawfully in a building with intent to commit a crime therein."

The entry becomes burglary in the first degree if the defendant is armed with a burglar's tool. ORS 164.225.

The officer gave high speed chase for approximately a mile and a quarter before the vehicle, driven by defendant, came to a stop in a residential driveway.

Defendant consented to a search of the vehicle, whereupon the deputy found several chairs in the back seat and trunk, three pairs of gloves, a pair of pliers, and a small tool box which contained, among other things, what the deputy believed to be an "ignition punch" capable of being used to pop out locks and ignitions. A screwdriver and pen-light were discovered on defendant's person.

One of the mobile homes on the sales lot was found to have its back door pried open. Chairs, lamps and other furniture were found outside the home. One of the owners of the sales lot testified that defendant had no permission to be on the premises for any purpose at the time in question.

## Exculpatory Evidence

Defendant admitted being on the sales lot but testified that his purpose there was to return certain furniture stolen by others and delivered to the apartment of a friend of defendant. Defendant testified that he waited until 1 a.m. to return the furniture because he was on parole and did not wish to be seen by the police. It was defendant's testimony that he made two trips in his car to the sales lot, placing returned furniture outside a mobile home, the door to which was ajar when he arrived. On the third such trip he picked up his friend's brother. It was while unloading furniture on the third trip that defendant saw the police car, yelled to his companion, and the two fled in the car.

## Jury Instructions on Lesser Offenses

The defendant requested that the trial court instruct the jury on the lesser included offense of criminal trespass in the second degree, ORS 164.245(1):

"A person commits the crime of criminal trespass in the second degree if he enters or remains unlawfully in or upon premises."

The trial court refused. The trial judge was of the opinion that, if the jury believed defendant's account of the facts, i.e., that he was returning property stolen by others,

defendant's presence on the premises would have the implied consent of the owners and, therefore, a conviction for criminal trespass could not be justified. The trial judge instructed the jury on burglary in the first degree and burglary in the second degree. The jury returned a verdict of guilty of burglary in the first degree. On appeal, the state acknowledged that the trial court's assessment of the criminal trespass statute, and his belief as to implied consent, were incorrect and conceded the trial court erred.

 The requirement that the trial judge instruct the jury on lesser included offenses comes from ORS 136.465, as explained in *State v. Washington,* 273 Or 829, 543 P2d 1058 (1975):

> "The single limitation on the right of either the prosecution or the defendant to request lesser included offense instructions under these statutes is that there must be evidence, or an inference which can be drawn from the evidence, which supports the requested instruction so that the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater. * * *"

*State v. Washington,* 273 Or at 836. *See also State v. Palaia,* 289 Or 463, 614 P2d 1120 (1980). A defendant is entitled to an instruction on lesser included offenses if there is a disputed issue of fact enabling the jury to find that all the elements of the greater offense have not been proven, but that all the elements of one or more of the lesser offenses have been proven.[2] *State v. Williams, supra* 270 at 155.

In the instant case defendant presented evidence that he did not enter the building and that he did not enter or remain upon the premises with an intent to commit a crime thereon. That evidence created a dispute as to issues of fact that would enable the jury to find that all the elements of the greater offense had not been proven. Nonetheless, defendant admitted to having been on the premises of the sales lot, and there was testimony by one

---

[2] This statement and the language quoted from *State v. Washington,* 273 Or 829, 836, 543 P2d 1058 (1975), are subject to the qualification that the lesser included offense must be one which is included either in the statutory framework concerning the greater and lesser offenses or in the accusatory instrument itself. *State v. Washington, supra.* In this case, the lesser included offense is embraced both by the statutory framework and by the accusatory instrument.

of the owners of the lot that defendant did not have permission to be on the premises for any purpose. Thus, the jury could have found that all the elements of the lesser included offense of criminal trespass in the second degree had been proven.

■ The requirements of *Washington* and *Williams* for instructing the jury on the lesser included offense were met, and the requested instruction should have been given.

## Harmless Error

■ As noted above, the state concedes that, under the facts of this case, defendant was entitled to the requested instruction on criminal trespass in the second degree and that it was error for the judge to refuse to give the instruction. The state contends, however, that such error was harmless and this court should affirm defendant's conviction in spite of the error by the trial court.

The state relies upon the decision of this court in *State v. Van Hooser*, 266 Or 19, 511 P2d 359 (1973), in which we had occasion to consider some of the ramifications of Or Const Art VII (Amend), § 3, insofar as it provides:

" * * * If the supreme court shall be of opinion, after consideration of all of the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; * * *."

We noted that this constitutional provision had been "interpreted * * * in several different ways" by this court since the adoption of the amendment. We discussed at least three lines of cases in which differing views of the function of this court under that constitutional provision had obtained. We then stated what we believed to be "reasonable criteria to use in complying with the constitutional mandate" for affirmance despite error:

"(1) that there was substantial and convincing evidence[3] of guilt; and (2) that the error committed was very unlikely to have changed the result of the trial."

---

[3] We did not explain what we meant by "substantial and convincing evidence." Ordinarily, when we use the term "substantial evidence," we do not

266 Or at 25-26. Those were criteria we had theretofore utilized in *State v. McLean,* 255 Or 464, 468 P2d 521 (1970).

In *State v. Harley,* 218 Or 263, 267, 344 P2d 773 (1959), we recognized that the authority or duty given to this court under Or Const Art VII (Amend), § 3, "has been and should be exercised with utmost caution."[4] We have never questioned that statement, nor do we see any compelling reason to do so.

In *State v. Davis,* 70 Or 93, 140 P 448 (1914), the error in the trial court was in the giving of certain instructions to the jury. As in this case, the state urged that this court should sustain the conviction upon the basis of the constitutional language above quoted. This court declined to do so, saying:

> "but the case was submitted to the jury upon a wrong theory of the law, * * *. Therefore we are not permitted to theorize as to what the verdict of the jury should have been if the issues had been properly presented."

70 Or at 101. Applying that approach, we cannot say "that the error committed was very unlikely to have changed the result of the trial." *State v. Van Hooser, supra.*

The defendant presented evidence which, if believed by the jury, would support a conviction of no more than criminal trespass in the second degree. The instruction should have been given. *Carter v. Mote,* 285 Or 275, 279, 590 P2d 1214 (1979). The failure of the trial court to give the instruction resulted in the case being submitted to the jury without the complete statement of the law necessary for the jury to properly exercise its function in the

---

equate it with that quantum and quality of evidence necessary to establish proof beyond a reasonable doubt. When we use the adjective "convincing" to modify the noun "evidence," we normally couple it with another adjective, i.e., "clear and convincing." We certainly regard "clear and convincing evidence" as being something less in quantum and quality than that necessary for conviction in a criminal case.

[4] The result in *State v. Harley,* 218 Or 263, 344 P2d 773 (1959), was expressly approved in *State v. McLean,* 255 Or 464, 468 P2d 521 (1970), although a further rule followed in *Harley* was disapproved in *McLean.* The rule overruled was that the judgment must be reversed unless the record conclusively shows that the error was not prejudicial. By citing *Harley* in the text of this opinion, we do not mean to resurrect that rule.

trial of this defendant. We are unable to say what the verdict would have been had the theory of the defense been properly presented to the jury. *State v. Davis, supra.* `

At the outset of this opinion we quoted a statement of the Court of Appeals which formed a basis for that court's decision. Under that reasoning there could never be a case in which the failure to give a requested instruction on a lesser included offense could be other than harmless error, for if the jury finds the defendant not guilty of the greater offense, certainly the defendant would have no occasion to challenge the error. On the other hand, if the jury finds the defendant guilty of the greater offense, the error becomes harmless by that finding, *ipso facto.* The right of the defendant to have the jury instructed on a lesser included offense could be violated with impunity by every trial court.[5]

ORS 136.465 represents a legislative choice that both the state and the defendant shall have a right to have a jury, in appropriate circumstances, consider whether the defendant is guilty of an offense less than that with which the defendant has been charged. One of the apparent reasons for the grant to the jury of this power is to avoid placing the jury in the position of making an all-or-nothing choice as between guilt and innocence where there is evidence which would justify a verdict of guilty of a lesser offense.[6] The difficulty with presenting the jury with the all-or-nothing choice is that the jury may believe a defendant to be guilty of some apparent violation of the criminal code but not of the crime charged. The jury is then confronted with the choice of finding innocent a defendant it

---

[5] Although in a different context, we have stated:

"If the only way defendants can be assured fair trials is for appellate courts to reverse an occasional judgment in the face of what well may be overwhelming evidence of guilt, then that is the course we must take. Any other course would encourage the wholesale destruction of the rights of accused persons. * * * "

*State v. Wederski,* 230 Or 57, 62, 368 P2d 393 (1962).

[6] *Compare Beck v. Alabama,* 447 US 625, 100 S Ct 2382, 65 L Ed 2d 392 (1980), discussing due process implications of instructing on lesser included offenses in a capital case.

believes has been guilty of wrongdoing or finding a defendant guilty of a crime greater than that which the jury believes he has committed. That result of such a choice may in one case redound to the benefit of the defendant and, in another, to the "benefit of the prosecution," assuming that an unjustified conviction can ever be found to be to the benefit of the people. By statute the legislature provides the means for avoidance of this Hobson's choice.

Reversed and remanded.